HERBERT L. CARPENTER, ATTORNEY GENERAL, *ex. rel, vs.* GEORGE E. COMERY.

JULY 2, 1923.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

*(1) Board of Accountancy.*

To be eligible to the office of a member of the Board of Accountancy a person must have been at the time of his appointment a citizen of the State, skilled in the practice of accounting and a certified public accountant and he must also at that time have been actively engaged in the practice of accounting on his own account in this State for not less than three years next preceding.

*(2). Board of Accountancy.*

Gen. Laws, 1909, cap. 34, § 2, provides that to be eligible as a member of the Board of Accountancy, persons appointed "shall have been actively engaged therein on their own account."

*Held,* that the practice on their own account need not be so continuous as to exclude all other activities on the part of appointees, but the statute should receive a liberal construction.

(3)   *Board of Accountancy.*

Where an appointee to the office of a member of the Board of Accountancy had for a portion of the three years preceding his appointment been employed by the day by another accountant, the work not being continuous, and during all of that time was engaged in the practice of accounting on his own account on days when not in the service of his employer and had a place of business at his own home, he was eligible to the office.

(4)   *Findings of Fact by Co-ordinate Branch of Government.*

Great weight and persuasive force will be given to findings of fact by co-ordinate branches of the government and before the court will hold adversely to their finding a relator must satisfy it that their action cannot be supported by reasonable intendments and allowable presumption in its favor.

VINCENT, J., dissents.

INFORMATION in nature of *quo warranto.* Prayer denied and information dismissed.

SWEETLAND, C. J.   This is an information in the nature of *quo warranto* preferred by Herbert L. Carpenter, in behalf of the State upon the relation of George M. Rex, to determine the title of the respondent to the office of member of the State Board of Accountancy.

It appears that at the January session of the General Assembly, A. D. 1920, the governor with the advice and consent of the senate appointed the relator, George M. Rex, a member of the State Board of Accountancy to hold office from the first day of February 1920 until the first day of February 1923, and until the appointment and qualification of his successor in said office. The relator qualified and held the office during said term and claims that he continues to hold the office. On January 13, 1923, the governor nominated the respondent as a member of said Board of Accountancy for the term of three years from the first day of February 1923 to succeed the relator Rex, and on February 2, 1923 the senate gave its advice and consent to the appointment of the respondent.

The claim of the relator is that at the time of the appointment of the respondent he was not eligible to the office because he had not been actively engaged in the practice of accounting on his own account in this state for three years next preceding the date of his appointment, and that, notwithstanding his ineligibility, the respondent has done all things required by law for qualification to said office and is illegally using and exercising said office.

Section 1, Chapter 34, General Laws 1909, designates the persons who may practice as certified accountants in this state, as follows: "Any citizen of the United States, or person who has duly declared his intention of becoming such citizen, having a place for the regular transaction of business as a professional accountant in this state, being over the age of twenty-one years, of good moral character, who shall have received as hereinafter provided in this chapter a certificate of his qualifications to practice as a certified public accountant, shall be deemed and known as a certified public accountant under the provisions of this chapter."

Section 2 of said Chapter provides for the appointment of members of the State Board of Accountancy. In part the section is as follows: "Section 2. There shall be a board of examiners, to be known as the state board of accountancy, to carry out the purposes and enforce the provisions of this chapter. The members of said board, consisting of three persons, shall be citizens of this state and skilled in the practice of accounting, and when appointed shall have been actively engaged therein on their own account in this state for not less than the three years next preceding the date of their appointment. At the January session of the general assembly, A. D. nineteen hundred nine, and annually thereafter, the governor, with the advice and consent of the senate, shall appoint one member of said board, who when appointed shall be a certified public accountant, to hold office until the first day of February in the third year after his appointment, to succeed the member of such board whose term will next expire."

In the argument before us it was urged in behalf of the respondent that as to members of the board appointed by the governor with the advice and consent of the senate at and after the January Session 1909 the only requirement for eligibility is that the member appointed "shall be a certified public accountant at the time of his appointment."

The provision as to requirements for eligibility to the office of a member of the board, contained in Section 2, has some apparent uncertainty. No reason appears, however, which would lead the General Assembly to make the great difference, for which the respondent contends, between the requirements for eligibility of members appointed before, and those appointed at and after the January Session 1909. We are aided in determining the construction which should be given to Section 2 by reference to Chapter 1370, Public Laws 1906, in which the Board of Accountancy was created, and the business of certified public accountants was first regulated in this state. Under Section 2 of Chapter 1370, Public Laws 1906, it was provided that the members of the board "shall be citizens of this state and skilled in the practice of accounting, and when appointed shall have been actively engaged therein on their own account in this state for not less than the three years next preceding the date of their appointment." As at that time there were no public accountants, certified in accordance with the laws of this state, the requirement would have been unreasonable and inoperative that the members first appointed should be certified public accountants. By the further provisions of Section 2 it was required that members of the board appointed at and after the January Session 1907 should be certified public accountants. This was clearly intended not as the sole requirement of eligibility of members of the board appointed at and after the January Session 1907, but as an added requirement applicable to such later appointees. Upon the revision of the General Laws in 1909, Chapter 1370 Public Laws 1906 was reënacted as Chapter 34 with such changes only as the date of reënactment

necessitated. The added requirement, contained in the Public Laws, Chapter 1370, with reference to members appointed at and after the January Session 1907, was made (1) applicable to members appointed at and after the January Session 1909.

To be eligible to the office in question the respondent must have been at the time of his appointment a citizen of this state; skilled in the practice of accounting and a certified public accountant. All of these qualifications the respondent undoubtedly possessed. He must also at that time have been actively engaged in the practice of accounting on his own account in this state for not less than three years next preceding. As to the latter qualification, question is raised. It appears that on May 1, 1921, the respondent organized a firm of accountants doing business in Providence, and from that time until his appointment, February 2, 1923, it is not disputed that the respondent was engaged in the practice of accounting on his own account in this state. For about six years previous to May 1, 1921, the respondent was employed by the relator, in the later years as the relator's chief accountant. Because of the nature of the business of accountancy the respondent was employed by the day, receiving compensation for such days only as he rendered service. According to the testimony of the respondent, which was uncontradicted, during all the time that he worked for the relator he was engaged in the practice of accounting on his own account. The amount of such practice was not extensive but continued during all that period, on days in which he was not employed by the relator and in the evening. He had a place of his own where he regularly transacted business at his own home. At times when business came to him from his personal clients, which he could not perform without interfering with his employment by the relator, he gave the business to the relator.

The language of the statute is not explicit. The expression "engaged therein on their own account" is somewhat indefinite and the requirement is not that the practice on

their own account should be so continuous as to exclude all other activities on the part of appointees. We think that in this respect the statute should receive a liberal construction in favor of the appointee. From the evidence before us we may reasonably find that the respondent, within the language of the statute, was engaged in the practice of accounting for his sole individual profit, although not exclusively, during at least three years next preceding the date of his appointment, and that he was eligible to the office. We are the more inclined toward this determination, because it is in accord with the finding of the governor in making the appointment, and with that of a house of the General Assembly in giving its advice and consent to such appointment. It has been the settled practice of this court to give great weight and persuasive force to the findings of fact of those coördinate branches of the government. They have each passed upon the eligibility of the respondent. Before we will hold adversely to their finding, the relator must satisfy us that their action can not be supported by reasonable intendments and allowable presumption in its favor.

The prayer is denied. The information is dismissed.

VINCENT, J., dissenting: I concur in that part of the majority opinion which holds that no one is eligible for appointment to the State Board of Accountancy unless when appointed he shall have been actively engaged in the practice of accounting on his own account for three years or more preceding the date of his appointment.

I dissent however from the finding that Mr. Comery has been so "actively engaged" for the required period of three years. He was appointed by the Governor on January 13, 1923, and the senate gave its advice and consent to said appointment on February 2, 1923.

· Mr. Comery testified that in May 1921 he became associated with two gentlemen under the firm name of Comery,

Davison and Jacobson and that since that time said firm has carried on the business of accounting.

It will be seen by a comparison of these dates that the connection of Mr. Comery with this firm had. not, at the time of his appointment, continued for a period of three years and therefore was not sufficient to make him eligible for the position.

In this dilemma Mr. Comery undertakes to piece out the term of his activities as an accountant on his own account, and attempts to show that previous to the establishment of his firm and while in the employ of Mr. Rex he rendered, to several parties, some service in the way of accounting and that he received compensation therefor to his own use.

I think that a brief examination of the testimony of Mr. Comery is sufficient to show that his claim in that regard is nothing more than a shallow pretense.

He says he was engaged by two parties in the making of income tax returns, which he characterizes as accounting work. One of these parties was an uncle of his wife and the other a concern in which his sister was employed and in which he, at one time, had been employed as a bookkeeper.

He gives the names of nine other concerns, which he claims sought his services as an accountant, prior to the establishment of his firm in May 1921, but in each case he turned the business over to Mr. Rex in whose employ he was. As he expressed it "I brought it home." He never had any letterheads or billheads. His name, as a certified public accountant, had never appeared in any telephone or other directory. He kept no books of account, no books of his private affairs. He had no office other than his place in the office of Mr. Rex. He stated that he did some work at his home but he admitted that he had no sign on window or door indicating that a certified public accountant abided there.

It seems clear to me that Mr. Comery, upon his own testimony, has signally failed to show that prior to the establishment of his firm in May 1921 he was actively

engaged in the practice of accounting on his own account and therefore he was not eligible for membership on the State Board of Accountancy.

"Actively engaged" means something more than a sporadic service. It implies a reasonable continuity of action, a frequently recurring activity. The situation is not met by an occasional or unimportant service even assuming that Mr. Comery on his testimony is entitled to that concession.

The question of eligibility is one which should be determined by this court upon its merits irrespective of what may be the opinions or findings of others. If upon the testimony presented there is even a reasonable doubt as to the qualification of the person seeking the position the state and not the aspirant should be given the benefit thereof.

I think the prayer of the writ should have been granted.

*Herbert A. Rice,* for relator.

*Fitzgerald & Higgins,* for respondent.